IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

MANUEL RAMIREZ–  §
JIMENEZ,  §
    Movant,  §
      §  EP-14-CV-435-PRM
v.  §  EP-12-CR-2901-PRM
      §
UNITED STATES OF  §
AMERICA,  §
    Respondent.  §

## MEMORANDUM OPINION AND ORDER

On this day, the Court considered Movant Manuel Ramirez-Jimenez's "Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" [hereinafter "Motion"] (ECF No. 89)[1] and the Government's "Response to Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside[,] or Correct Sentence by a Person in Federal Custody" [hereinafter "Response"] (ECF No. 97), filed in the above-captioned cause. In his Motion, Movant, a prisoner at the Federal Correctional Institution in Seagoville, Texas, challenges the sixty-three-month term of imprisonment imposed by the Court after a jury found Movant guilty of illegally re-entering the United States. Movant alleges that he was prejudiced at trial on religious grounds. Movant

---

[1] "ECF No." in this context refers to the Electronic Case Filing number for documents docketed in EP-12-CR-2901.

also brings several ineffective-assistance of counsel claims.  For the reasons set forth below, the Court concludes that Movant is not entitled to § 2255 relief. The Court will, accordingly, deny his Motion and dismiss his civil cause with prejudice.  The Court will also deny him a certificate of appealability.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On December 3, 2015, Movant was arrested and charged with illegally re-entering the United States in violation of 8 U.S.C. § 1326.  *See* Criminal Compl. 1, Dec. 4, 2012, ECF No. 1.  On December 26, 2012, a grand jury, sitting in the Western District of Texas, El Paso Division, returned a one-count indictment, charging Movant with illegal re-entry.  Indictment 1, Dec. 26, 2012, ECF No. 9. That same day, the Government filed a "Notice of Intent to Seek Increased Statutory Penalty," (ECF No. 10) pursuant to 8 U.S.C. § 1326(b)(2).[2]

Jury selection began on February 12, 2013.  During voir dire, the Court asked the jury panel a number of questions, including whether any of them had relatives who were employed in law enforcement.  Trial Tr. Vol. I, at 81, July 17, 2013, ECF No. 83.  Several of the prospective jurors answered affirmatively; three of these prospective jurors were later empaneled to sit on the jury after

---

[2] Section 1326(b)(2) provides that any alien "whose removal was subsequent to a conviction or commission of an aggravated felony, such alien shall be fined under such title, imprisoned not more than 20 years or both."

they confirmed that their relationship to individuals employed in law enforcement would not hinder their ability to be impartial in the case. *See id.* at 84–87.

During the trial, Border Patrol Agent Jose Rivera ("Agent Rivera") testified that he arrested Movant after other agents observed him entering the United States from Mexico, about thirteen miles east of the port of entry at Fabens, Texas. *Id.* at 27–29. Agent Rivera also testified that upon searching Movant, he found "a little . . . two, three-inch statue of a Santa Muerte" and garlic clove in Movant's pocket. *Id.* at 29. At trial, Movant claimed that he entered the United States under duress, and not voluntarily. Trial Tr. Vol. II, at 129, July 17, 2013, ECF No. 84. Movant testified that he escaped across the border from his kidnappers, who were attempting to collect money from him. *Id.* at 138–41. Consequently, the Court instructed the jury on the elements of a duress defense. Ct.'s Instr. to the Jury 14–15, Feb. 14, 2013, ECF No. 65. On February 14, 2013, the jury returned a verdict of guilty on the one-count indictment of illegal re-entry. Verdict, February 14, 2013, ECF No. 67.

At his sentencing hearing, on April 11, 2013, Movant orally moved for variance and a downward departure. ECF No. 70. Specifically, Movant asked the Court to sentence him outside of the advisory guideline range based on his

3

claim of duress. Sentence Tr. 9, Mar. 5, 2015, ECF No. 96. The Government countered, asking the Court to deny Movant's request for variance because of the alleged inconsistencies in Movant's account regarding his duress claim. *Id.* at 13. The Government also recounted that the Santa Muerte statue and the clove of garlic were found in Movant's pocket when arrested, noting that Santa Muerte is the "patriot saint of drug dealers." *Id.* at 14.

The Court ultimately rejected Defendant's request for a sentence outside of the advisory guideline range and imposed a sentence of sixty-three months' imprisonment, which was at the bottom of the guideline range. J. Criminal Case 2, Apr. 12, 2013, ECF No. 73.

The Court of Appeals for the Fifth Circuit affirmed the Court's sentence on July 8, 2014. J. 1, July 30, 2014, ECF No. 88. Movant then filed his § 2255 Motion attacking his conviction on two main grounds: (1) Movant was prejudiced on religious grounds because one of the days on which his trial was convened was a religious holiday—Ash Wednesday and (2) his defense attorney provided constitutionally ineffective assistance of counsel. *See* Mot. 14–22.[3]

---

[3] Movant attaches documents that detail the factual allegations that support each one of the grounds on which he attacks his conviction and sentence. The Court has elected to use the ECF's pagination rather than the separate pagination of each document Movant has attached to his Motion.

Regarding Movant's ineffective assistance of counsel claims, Movant alleges that his counsel was ineffective when he (1) failed to object to the Government's comments during his sentencing hearing regarding the Santa Muerte statue and the clove of garlic found in his pocket when arrested; (2) failed to strike biased jurors related to individuals employed in law enforcement; (3) failed to elicit certain testimony during trial relating to his duress defense; (4) allowed flawed jury instructions to be published; and (5) failed to approach the Court or the prosecutor regarding a Government witness who allegedly committed perjury. *See id.*

## II.   LEGAL STANDARD

### A.   28 U.S.C. § 2255

After a defendant has been convicted and exhausted or waived any right to appeal, a court is normally "entitled to presume that the defendant stands fairly and finally convicted." *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Acklen*, 47 F.3d 739, 741 (5th Cir. 1995). To receive relief pursuant to § 2255, the movant must demonstrate (1) that the sentence

imposed violated the Constitution or laws of the United States, (2) that the sentencing court was without jurisdiction to impose the sentence, (3) that the sentence was in excess of the maximum authorized by law, or (4) that the sentence is otherwise subject to collateral attack. *United States v. Seyfert*, 67 F.3d 544, 546 (5th Cir. 1995). Ultimately, the movant bears the burden of establishing his claims of error by a preponderance of the evidence. *Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980).

A collateral challenge to a conviction or sentence should not serve as a substitute for a direct appeal. *United States v. Frady*, 456 U.S. 152, 165 (1982). The general rule is that claims not raised on direct appeal may not be raised on collateral review unless the movant shows cause for not raising the issue on direct appeal and actual prejudice from the error. *Massaro v. United States*, 538 U.S. 500, 504 (2003). Ineffective-assistance-of-counsel claims, however, do not fall under this general rule; failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar a movant from bringing such a claim pursuant to § 2255. *Id.* at 509.

## B.   Ineffective Assistance of Counsel

The United States Constitution's Sixth Amendment guarantees accused persons the right to the assistance of counsel for their defense in all criminal

6

prosecutions.  U.S. Const. amend. VI.  Moreover, "the right to counsel is the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970).  Generally, an ineffective-assistance-of-counsel claim is analyzed under the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  *United States v. Willis*, 273 F.3d 592, 598 (5th Cir. 2001).  To prevail, a movant must demonstrate (1) that his counsel's performance was deficient in that it fell below an objective standard of reasonableness; and (2) that the deficient performance prejudiced the defense.  *Strickland*, 466 U.S. at 687.  "Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim." *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997).

The *Strickland* test's performance prong centers on whether counsel's assistance was reasonable, considering all the circumstances at the time of counsel's conduct.  *Strickland*, 466 U.S. at 688.  "An attorney's performance, which enjoys a strong presumption of adequacy, is deficient if it is objectively unreasonable." *Acklen*, 47 F.3d at 741.  Counsel has a wide range of reasonable professional discretion.  "[T]he defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S.

91, 101 (1955)).  In order to obtain relief, a movant must establish "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.

The *Strickland* test's prejudice prong requires the movant to demonstrate with "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.  "This is a heavy burden which requires a 'substantial,' and not just a 'conceivable,' likelihood of a different result." *United States v. Wines*, 691 F.3d 599, 604 (5th Cir. 2012).  "With respect to prejudice in the context of noncapital sentencing, the habeas court must determine whether there is a probability that but for counsel's deficiency, the defendant's sentence would have been significantly less harsh." *Acklen*, 47 F.3d at 742.

"Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).  Because an ineffective-assistance claim "can function as a way to escape the rules of waiver and forfeiture and raise issues not presented at trial," the *Strickland* standard "must be applied with scrupulous care, lest 'intrusive post-trial inquiry' threaten the integrity of the very adversary process the right to counsel is meant to serve." *Harrington v.*

8

*Richter*, 562 U.S. 86, 105.  While, "it is 'all too tempting' to 'second-guess counsel's assistance after conviction or adverse sentence," "[t]he standard for judging counsel's representation is a most deferential one." *Id.*

With these principles in mind, the Court will address Movant's claims.

## III.   ANALYSIS

### A.   Religious Prejudice Because Trial was Convened on Ash Wednesday

The second day of Movant's trial fell on Ash Wednesday of 2013.  Movant attacks his conviction on the ground that he was prejudiced at trial on religious grounds and that no steps were taken to counter these prejudicial effects.  Mot. 16–17.

> [Movant's] First and Fifth Amendment rights were violated when the Court convened the trial on a holy day in which those responsible for the [Movant's] fate actively participated, and on which day testimony was presented which tended to cast a pall on the [Movant's] apparent religious position in direct opposition to the loudly-expressed convictions of the remainder of the courtroom.

*Id.* at 17.  Movant alleges that during his trial, virtually everyone present—including members of the Jury and of the Court—displayed ashen crosses on their foreheads.  Movant contends that during this "heightened state of awareness of their religious convictions," the jury heard testimony that Movant

9

"carried an icon called 'Santa Muerte' in his pocket." *Id.* at 16. Therefore, Movant argues that

> those members of the Jury who held strong enough religious convictions to wear such a devout symbol of their faith on that day were likely to experience a non-objective motivation to convict upon drawing the rational inference that [Movant] revered a 'saint' which was not sanctioned by the Church and whose name apparently meant 'death.'

*Id.*

As outlined above, a movant raising issues of jurisdictional or constitutional magnitude for the first time in a motion seeking collateral relief must demonstrate either (1) "cause" for not raising the issue on direct appeal and "actual prejudice" resulting from the error or (2) show that he is "actually innocent" of the crime for which he was convicted. *United States v. Torres*, 163 F.3d 909, 911 (5th Cir. 1999). Otherwise, the movant has procedurally defaulted on these claims. *Bousley v. United States*, 523 U.S. 614, 622 (1998).

Instead of raising his religious prejudice claim on appeal, Movant has elected to raise this alleged error for the first time on collateral review. Significantly, Movant has failed to articulate the reason that he did not raise his prejudice claim on direct appeal, and, therefore, has not demonstrated cause.[4]

---

[4] Movant is required to demonstrate "cause" for not raising the issue on direct appeal and articulate how he was prejudiced. *Torres*, 163 F.3d at 911.

Further, Movant has not alleged nor established that he is actually innocent of the crime for which he was convicted. *See id.* Consequently, Movant has procedurally defaulted on his religious prejudice claim. *See Bousley*, 523 U.S. at 622.

**B.    Movant's Ineffective-Assistance Claims**

     *i.    Failure to Object to Government's Reference to Santa Muerte Statue during Sentencing*

Defendant also attacks his sentence on the ground that his counsel's failure to "object or counter the Government's religion-charged commentary" at his sentencing hearing violated his First, Fifth, and Sixth Amendment rights. Mot. 15.

At his sentencing hearing, Movant requested a downward departure from the advisory guideline range based on his duress defense. Sentence Tr. 9. In response to Movant's request, the Government highlighted the inconsistencies in Movant's testimony regarding his duress claim and also stated the following:

> And, if we're talking about history repeating itself, one thing that came out during the trial but that we didn't really talk about was what was in his pocket, the Santa Muerte statue and the clove of garlic, which we didn't have an expert testify about, but I'm sure the Court has heard discussed in other cases. That's the patron saint of drug dealers. That's what they use and that's what they pray to. That's what he had in his pocket.

11

*Id.* at 14.  After hearing from both the Defense and the Government regarding Movant's request for a downward departure, the Court ultimately concluded that the advisory guideline range was a fair range within which to assess a sentence that met all statutory requirements.  *Id.* at 15–16.  The Court noted that (1) Movant had a prior § 1326 conviction; (2) Movant's testimony regarding his duress claim was conflicting; (3) Movant failed to explain his motive for returning to the United States—other than the conflicting duress testimony he provided at trial; (4) the jury found Movant guilty of the charged offense, rejecting the duress defense; and (5) Movant was previously a legal, permanent resident who forfeited the privilege of being in the United States after having been convicted of the various crimes outlined in the Pre-Sentence Investigation Report.  *Id.* at 15.

Movant alleges that Counsel's failure to "counter the Government's assertion" impermissibly violated his due process rights."  Mot. 14. Furthermore, Movant alleges that "the error was material as it went to the Court's consideration of the Defendant's intent on re-entry and any risk he may have posed to the public."  *Id.*  Movant asserts that "[e]specially as a key contention at sentencing was whether the 16-level enhancement under USSG § 2L1.2 was appropriate . . . and whether his re-entry was innocuous."  *Id.* at 15.

12

Therefore, Movant argues that "the Court would have been better-postured to consider a lower sentence without the [G]overnment's improper overreach." *Id.*

Movant cites to *United States v. Medina-Copete*, 757 F.3d 1092 (10th Cir. 2014), to support his assertion that defense counsel was ineffective when he failed to object to the Government's reference to the Santa Muerte statue. *Id.* at 14. According to Movant, *Medina-Copete* held that it was "error to allow [a] federal marshal to testify that reference to Santa Muerte was a 'very good indicator' that the case involved drug trafficking" and that the error was not harmless because it was "highly prejudicial." *Id.*

The Government argues that *Medina-Copete* is not relevant to Movant's allegation. Resp. 7. The Court agrees. In *Medina-Copete*, the main issue was whether a federal marshal could testify during trial as an expert witness regarding the "connection between Santa Muerte worship and drug trafficking." 757 F.3d at 1106. The Tenth Circuit determined that the federal marshal was not qualified as an expert, his knowledge did not assist the jury, and his opinion was not based on the proper application of reliable principles and methods. *Id.* Therefore, *Medina-Copete* related to evidentiary issues at trial before the fact finder. 757 F.3d at 1106.

13

Here, the argument that the Government made before the Court during the sentencing hearing related to facts contained in the Pre-Sentence Investigation Report.  The Court is not bound by rules of evidence when considering all the appropriate factors in assessing an appropriate sentence. *United States v. West*, 58 F.3d 133, 138 (5th Cir. 1995) ("At sentencing, the district court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy.").  Thus, *Medina-Copete* is inapplicable.

Moreover, "the Constitution does not erect a per se barrier to the admission of evidence concerning one's beliefs and associations at sentencing simply because those beliefs and associations are protected by the First Amendment." *Dawson v. Delaware*, 503 U.S. 159, 165 (1992).  Such evidence is admissible if it is sufficiently related to the issues involved. *Boyle v. Johnson*, 93 F.3d 180, 184 (5th Cir. 1996).  A district court, in determining the particular sentence to be imposed, is required to consider "the nature and circumstances of the offense and the history and characteristics of the defendant."  18 U.S.C. § 3353(a)(1).

14

Here, the fact that Movant was found with the Santa Muerte statue in his pocket, which the Government alleged at sentencing is the patron saint of drug dealers, speaks to the circumstances of the offense.  Therefore, an objection to the Government's comment was unwarranted and would have been of no avail because it was related to the circumstances of the offense.  Consequently, defense counsel's decision not to object to the Government's Santa Muerte statue comment was not error—much less an error so serious that it made Movant's attorney not function as the "counsel" the Sixth Amendment guarantees.  *See Strickland*, 466 U.S. at 689.

The Court finds that Movant has not established that his counsel provided constitutionally ineffective assistance when he failed to object to the Government's mention of the Santa Muerte statue during his sentencing.  In short, Movant has not shown that his attorney's performance was deficient.

Movant has failed to establish the prejudice prong as well.  Movant has failed to demonstrate that his counsel's failure to object to the Santa Muerte statue comment would have resulted in a significantly less harsh sentence.[5]  *See*

---

[5] District courts have the discretion to sentence defendants within or outside of the advisory guideline range; defendants are not automatically entitled to variance or downward departure.  *See Gall v. United States*, 552 U.S. 38, 46 (2007) ("[A] district judge must give serious consideration to the extent of any departure from the Guidelines and must explain his conclusion that an

15

*United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999). ("An attorney's failure to raise a meritless argument . . . cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue.").

Finally, Movant's argument that "a key contention at sentencing was whether the 16-level enhancement under § 2L1.2 was appropriate" is incorrect. *See* Mot. 15. Movant did not dispute a prior conviction for carrying a firearm in relation to a drug-trafficking offense, which resulted in a 16-level upward adjustment to his base offense level pursuant to USSG § 2l1.2(b)(A)(iii). Sealed Presentence Investigation Report 5, Apr. 4 2013, ECF No. 68. Likewise, there was no contention at the sentencing hearing that the 16-level enhancement was not applicable pursuant to the sentencing guidelines. *See* Sentence Tr. 9. Movant's request for variance was the only contested issue before the Court during Movant's sentencing. *Id.* Accordingly, Movant cannot demonstrate that the Court would have granted Movant's request for variance and imposed a sentence outside of the guideline range had his attorney objected to the Government's Santa Muerte statue comment.

---

unusually lenient or an unusually harsh sentence is appropriate . . . . For even though the Guidelines are advisory rather than mandatory, they are . . . the product of careful study . . . ."). Here, the Court imposed a sentence within the guideline range.

### ii.   Failure to Strike Prejudiced Jurors

Movant next attacks his conviction on the ground that defense counsel was ineffective for failing to "remove prejudiced jurors from the panel, which violated [his] Fourteenth Amendment right to equal protection under the law." Mot. 17. Specifically, Movant alleges that the three jurors who acknowledged having relatives employed in law enforcement should have been removed from the juror panel because these jurors "likely had a predisposition against [Movant] because they had surely heard stories from their family members demeaning illegal immigrants." *Id.*

"[T]he right to a jury trial guarantees to the criminally accused a fair trial by a tribunal of impartial, 'indifferent' jurors." *Virgil v. Dretke*, 446 F.3d 598, 608–09 (5th Cir. 2006) (quoting *Irvin v. Dowd*, 366 U.S. 717, 722 (1961)). A juror is biased if the "juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Soria v. Johnson*, 207 F.3d 232, 242 (5th Cir. 2000). "In conducting the deficient performance analysis in the context of counsel's failure to strike an allegedly partial juror, a court first evaluates whether the juror at issue was actually biased." *Seigfried v. Greer*, 372 Fed. App'x 536, 539 (5th Cir. 2010). "If a juror is not biased, counsel's failure to challenge that juror does not support a

17

claim for ineffective assistance of counsel." *Wiley v. Grimmer*, 476 Fed. App'x 292, 294 (5th Cir. 2012) (citing *Virgil*, 446 F.3d at 608–09).

Here, Movant has not demonstrated that the jurors with relatives employed in law enforcement were biased. Movant's claim that these jurors "surely" heard stories from their family members demeaning illegal immigrants is highly speculative and unfounded. *See* Mot. 17. As the trial transcript demonstrates, the Court asked each of these jurors a series of questions during voir dire to ensure that they were capable of being impartial in Movant's case and reaching a verdict based on the evidence alone. Tr. Vol. I. at 84–87. Each one of these jurors indicated that they were capable of being impartial in Movant's case. *Id.* Based on the jurors' responses, the Court determined that their relationship to relatives employed in law enforcement would not impede the performance of their duties. Because Movant has not shown that any of the jurors were biased, his claim that defense counsel was ineffective for failing to remove the jurors also fails.

### iii.    *Failure to Elicit Testimony at Trial*

Movant also attacks his conviction on the basis that defense counsel was "ineffective in examining [Movant], members of his family, and prosecution

18

witnesses regarding several elements of [his duress] defense." Mot. 18. Movant claims that defense counsel should have elicited the following testimony:

(1) The word "coyote" refers not only to those individuals who transport illegal immigrants, but also to any illicit actor seeking to extort monies from common people. Namely, Movant claims that his sister Martha could have testified to this effect;

(2) Whether the people who allegedly kidnaped Movant called his sister Martha asking for the "cuota"[6];

(3) The reason(s) Movant did not seek help from the Border Patrol agent who arrested him—namely the fact that the "most rational, self-serving action in such a circumstance is to provide the authorities with the answer they seek which is most likely to enable the return of the [d]efendant to his home, rather than that he be kept in custody";

(4) The statuette and clove of garlic found in the [Movant's] pocket were "akin to the 'calling card' of the men who had accosted him";

(5) The agent who arrested him "had immediately and aggressively interrogated [Movant] under the suspicion that he had carried marijuana over the border"; and

(6) Clarification regarding the fact that Movant, and not his wife, owed the "cuota," and for this reason the Movant did not have direct cause to fear for his wife's safety.

Mot. 18–20.

Movant also alleges that defense counsel should have presented certain evidence during the jury trial regarding his duress defense. Specifically,

---

[6] "Cuota" is the Spanish word for "fee" or "share."

19

Movant alleges that defense counsel should have introduced a December 6, 2012, phone call between Movant and his sister. *Id.* at 19. Movant avers that this phone call—made two days following his arrest—"memorialized" the fact that Movant "told the USMS[7] of duress at the first opportunity." *Id.* Movant claims that defense counsel "should have raised this evidence to counter the prosecution's assertion that he had never mentioned it upon arrest." *Id.* According to Movant, "[t]his went to the crux of the defense and could have swayed the jury in its verdict." *Id.*

As outlined above, "surmounting *Strickland*'s high bar is never an easy task." *Padilla*, 559 U.S. at 371. A movant must demonstrate that defense counsel's failure to elicit the testimony made his performance deficient, and that this failure prejudiced his defense. *See Strickland*, 466 U.S. at 687.

Regarding Movant's claim that defense counsel should have elicited testimony that Movant told the United States Marshal Service of the duress at the first opportunity, defense counsel has stated that he was unable uncover evidence corroborating this allegation. Resp. Ex. A, at 4.[8] Therefore, defense

---

[7] Movant does not specify what "USMS" is, but construing Movant's allegations in a light most favorable to Movant, the Court assumes that Movant is referring to the United States Marshal Service.

counsel did not provide ineffective assistance when he failed to elicit testimony or provide evidence that he could not corroborate.  Hence, counsel's decision not to elicit this testimony from Movant was not unreasonable in light of the circumstances.  *See Strickland*, 466 U.S. at 687.

Movant's suggestion that defense counsel should have called Movant's sister, Martha, to testify regarding a phone call from the coyote similarly fails because defense counsel's decision not to call her was a deliberate and strategic one.  Movant's attorney recalls Movant's sister "as overall not being a beneficial witness to the defense, notwithstanding this helpful information [Movant] advises she could have provided."  Resp. Ex. A, at 4.

Movant's claim that defense counsel should have called Movant to testify as to the reasons he did not seek help from the Border Patrol agent who arrested him also fails.  As the Government has noted, "[a]t trial, Movant provided an answer to this question."  Resp. 14.  Both during direct examination and cross-examination, Movant provided testimony regarding the reason he did not tell the Border Patrol agent who arrested him that he had been kidnapped.  During direct examination, defense counsel asked Movant the following question:

---

[8] Defense counsel sent the Government a letter containing "a summary of [his] best recollection of [his] representation of [Movant] vis-à-vis the grounds alleged by Mr. Ramirez in his [Motion]."  Resp. Ex. A, at 1.  The Government attached defense counsel's letter as Exhibit A to its Response.

Attorney McMahon: Did you say to the officer, "I was just kidnapped at gunpoint?"

Movant: No.

Attorney McMahon: Why not?

Movant:   Well, first of all, when I got there, at that point, the officer who arrested me was also holding a gun.  So at that point I was thinking, well, I just got at this one and I'm getting into this other thing, but I realized that this one wasn't going to be as bad.

Trial Tr. Vol. II 143, July 17, 2013, ECF No. 84.

Therefore, Movant's claim that defense counsel should have elicited testimony from him regarding the reason he did not inform the Border Patrol agent who arrested him of his alleged kidnapping and duress situation is unavailing.  Defense counsel did provide Movant an opportunity to explain his reasoning for not informing the Border Patrol agent of his alleged duress.  Yet, when given the opportunity, Movant did not provide the reasons set forth in his Motion—namely that he was merely providing the Border Patrol agent the answer he thought the agent wanted to hear so that he could be set free.

Moreover, regarding Movant's remaining claims, Movant cannot demonstrate that there is reasonable probability that, but for counsel's failure to elicit this specific testimony, the result of the proceeding would have been different.  *See Strickland*, 466 U.S. at 694.  A reasonable probability is a

22

probability sufficient to undermine confidence in the outcome." *Id.* at 694. "This is a heavy burden which requires a 'substantial,' and not just a 'conceivable,' likelihood of a different result." *Wines*, 691 F.3d at 604. The Court concludes that Movant has failed to meet this burden of showing that his counsel's performance fell below an objective standard of reasonableness or prejudiced his cause.

### iv. *Allowing Flawed Jury Instructions to be Published*

Movant also alleges that defense counsel "allowed flawed jury instructions to be published." Mot. 20. Specifically, Movant alleges that page 26 of the trial transcript contains the word "waived," which should have been "weighed," and page 51 of the trial transcript contains the word "export," which should have been "extort." *Id.* The transcript reads in pertinent part:

> The testimony of the defendant should be *waived* and his credibility evaluated in the same way of that as any other witness.

Trial Tr. Vol. III 26, July 13, 2013, ECF No. 85 (emphasis added).

> The bad guys in this case, as my client says, be they coyotes or dogs or cats or whatever they are, the bad guys in this case are in the business of *exporting* and of separating families.

*Id.* at 51 (emphasis added).

These were not flawed jury instructions as Movant claims—they were transcript errors. Moreover, the second excerpt, which incorrectly states

23

"exporting" rather than "extorting" was a statement that defense counsel made during closing arguments; it was not included in the jury instructions. *See id.* The Government avers that it "contacted the court reporter assigned to this case's proceedings, who confirmed that the audio reflected the correct words to be 'weighed' and 'extorting.'" Resp. 16. And on March 5, 2015, the court reporter filed the corrected transcripts of Volume III of the Trial and the Sentencing (ECF No. 95). Therefore, Movant's claim that his counsel was ineffective because he allowed flawed jury instructions to be published also fails.

       *v.   Allowing Government Witness's Alleged Perjured Testimony*

Movant's final claim is that his attorney provided ineffective assistance when he "refused to approach the prosecutor or the Court about [a] violation of his Constitutional right to confront witnesses against him." Mot. 21. Movant alleges that the "witness presented by the Government as the officer who arrested [Movant] is not the man who arrested him." *Id.* Movant further alleges that Agent Rivera "also testified that the [Movant] possessed a [two-to-three-inch] icon of 'Santa Muerte' and a garlic clove," which Movant claims was "especially prejudicial to [Movant]." *Id.* Therefore, Movant argues that his Fifth and Sixth Amendment rights were violated and the trial was "fundamentally flawed" because his right to confront witnesses against him was violated, and

because defense counsel "failed to prosecute [Movant's] allegations of this error." *Id.* at 22.  Movant also alleges that his Fifth and Sixth Amendment rights were violated because the Government "committed misconduct and suborned perjury by allowing [Agent] Rivera to falsely claim that he was the one who arrested [Movant]." *Id.*

There was no "error," as Movant alleges, because Movant is mistaken regarding the Confrontation Clause.  "The Sixth Amendment's Confrontation Clause provides that, in all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." *See Crawford v. Washington*, 541 U.S. 36, 42 (2004) (internal quotation marks and alterations omitted).  The seminal case of *Crawford v. Washington* examined the Sixth Amendment's Confrontation Clause and held that it bars the admission of testimonial statements made against the defendant unless the defendant has an opportunity to cross-examine the witness who made the statement. *Id.* at 65–69; *see also United States v. Acosta*, 475 F.3d 677, 681 (5th Cir. 2007) ("*Crawford* bars the admission of testimonial statements unless the defendant had the opportunity to cross-examine the witness.").

Here, as the Government notes, "[t]he record clearly shows that Agent Jose Rivera was in fact, the person who approached Movant and later arrested

25

him." Resp. 17.  Agent Rivera provided his testimony during trial, and defense counsel cross-examined him.  Therefore, Movant's Confrontation Clause rights were not violated.  Moreover, even if Movant is correct in his assertion that Agent Rivera was not the officer who originally arrested him, and that it was a "white officer," no testimonial statements made by this unidentified "white officer" were introduced at trial.  Therefore, Movant's Confrontation Clause rights were not violated.  Consequently, Movant's claim that his counsel should have "prosecuted his allegations of this error" regarding his Confrontation Clause rights is unfounded.

Accordingly, the Court finds that Movant is not entitled to relief pursuant to § 2255.

## IV.   EVIDENTIARY HEARING

A § 2255 motion may be denied without a hearing if the motion, files, and records of the case conclusively show that the Movant is not entitled to relief. *United States v. Bartholomew*, 974 F.3d 39, 41 (5th Cir. 1992).  The record in this case is adequate to dispose fully and fairly of Movant's claims.  The Court does not need to inquire any further on collateral review, and an evidentiary hearing is not necessary.

## V.   CERTIFICATE OF APPEALABILITY

A petitioner may not appeal a final order in a habeas corpus proceeding "[u]nless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(B) (2012).

A certificate of appealability "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In cases where a district court rejects a petitioner's constitutional claims on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). To warrant a grant of the certificate as to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

Here, Movant's Motion fails because he has not made a substantial showing of the denial of a constitutional right. Accordingly, the Court finds that it should deny Movant a certificate of appealability.

27

## VI.   CONCLUSION

For the reasons stated, the Court concludes that it should deny Movant's Motion and dismiss his civil cause.  The Court further concludes that Movant is not entitled to a certificate of appealability.

Accordingly, **IT IS ORDERED** that Movant Manuel Ramirez-Jimenez's "Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" (ECF No. 89) is **DENIED** and his civil cause is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that Movant Manuel Ramirez-Jimenez is **DENIED** a Certificate of Appealability.

**IT IS FURTHER ORDERED** that all pending motions, if any, are **DENIED AS MOOT.**

**IT IS FINALLY ORDERED** that the Clerk shall **CLOSE** this matter.

SIGNED this _29_ day of **December, 2015.**

_____
PHILIP R. MARTINEZ
UNITED STATES DISTRICT JUDGE